## JENKINS v. STEPHENS.

No. 4089.   Decided September 9, 1924.   Rehearing Denied October
27, 1924.   (231 Pac. 112.)

1. EXCEPTIONS, BILL OF—TAKING APPEAL NOT WAIVER OF NOTICE
OF ORDER OVERRULING MOTION FOR NEW TRIAL.  As time for ap-
peal cannot be extended, whether notice of ruling on motion
for new trial is served or not, taking of appeal is not waiver
of such notice so as to deprive court of jurisdiction to settle bill
of exceptions, service of which is required by Comp. Laws
1917, § 6969, within 30 days after service of notice in writing
(section 7024), of determination of motion for new trial.[1]

2. APPEAL AND ERROR—FINDINGS NOT DISTURBED IF SUPPORTED BY
ANY SUBSTANTIAL COMPETENT EVIDENCE.  Supreme Court can-
not weigh evidence in law cases, and judgment, in absence of
prejudicial error of law, will not be disturbed, if jury's ver-
dict is supported by any substantial competent evidence.

3. TRIAL—READING OF REBUTTAL WITNESS' DIRECT TESTIMONY ONLY
TO JURY, IN ABSENCE OF COUNSEL OR NOTICE TO LATTER, HELD
ERROR.  Reading of only direct examination of plaintiff's re-
buttal witness, in absence of counsel or notice to them that
jury desired further instructions, as required by Comp. Laws
1917, § 6811, held error, though jury expressed themselves as
satisfied with what was read.

4. TRIAL—ORAL INSTRUCTION, AFTER JURY'S RETURN FOR FURTHER
INFORMATION, THAT VERDICT WOULD NOT AFFECT FUTURE DAM-
AGES, HELD ERROR.  Oral instruction, in response to jury's re-
quest for further information after submission of case, that
verdict would not affect future damages, held error, as con-
trary to instruction, with which all parties were satisfied, that
depreciation in market value of lands was measure of dam-
ages.

5. TRIAL—INSTRUCTION TO CONSIDER DAMAGES UP TO "PRESENT
TIME" HELD ERRONEOUS.  Oral instruction, on jury's return for
further information, to consider damages up to "present time,"
held erroneous, if case was tried on theory that damages were
not to include future damages, as permitting consideration
of damages up to time of instruction, rather than to date of
filing complaint.

6. APPEAL AND ERROR—READING OF WITNESS' DIRECT TESTIMONY
ONLY TO JURY, IN ABSENCE OF COUNSEL, AND INSTRUCTION IN

CONFLICT WITH FORMER INSTRUCTIONS, REVERSIBLE ERROR. Permitting reading of witness' direct testimony to jury, in absence of counsel, without having cross-examination read, and giving of instruction in conflict with former instructions, *held* errors requiring reversal.

FRICK, J., dissenting.

Appeal from District Court, Second District, Weber County; *Geo. S. Barker,* Judge.

Action by W. L. Jenkins against Lottie M. Stephens. Judgment for plaintiff, and defendant appeals.

REVERSED, and new trial granted.

*N. J. Harris,* of Ogden, for appellant.

*Halverson & Pratt,* of Ogden, for respondent.

---

[1] *Burlock* v. *Shupe,* 5 Utah, 428, 17 P. 19; *Mercantile Co.* v. *Glenn,* 6 Utah, 139, 21 P. 500; *Everett* v. *Jones,* 32 Utah, 489, 91 P. 360; *Minneapolis Threshing Mach. Co.* v. *Fox,* 52 Utah, 101, 172 P. 699, distinguishing *State* v. *District Court,* 38 Utah, 138, 110 P. 981, Ann. Cas. 1913B, 437.

See (1) 3 C. J. p. 1059, 4 C. J. p. 278 (2) 4 C. J. pp. 853, 861 (3) 38 Cyc. p. 1863 (4, 5) 38 Cyc. p. 1865 (6) 4 C. J. p. 955 (1926 Anno.).

GIDEON, J.

In this action plaintiff (respondent) seeks judgment against the defendant (appellant) for the wrongful construction of a dam or dike across a water course near the east line of the appellant's property and immediately west of the respondent's property. The construction of the dam, it is alleged, caused water to flood respondent's lands to his damage. Respondent had judgment. Defendant appeals.

After the appeal had been perfected in this court and the record filed here, the respondent filed a motion to strike the bill of exceptions upon the ground that the proposed bill had not been served within the time fixed by statute. Typewrit-

ten briefs were submitted and the court, after consideration, denied the motion. The minute entry denying the motion is as follows:

"In this cause it is ordered that the motion to strike the bill of exceptions be denied; the reasons for the denial of the motion to be stated in the opinion to be filed on the hearing of said cause on merits."   *

The appellant thereafter prepared and had printed an abstract of the record as well as printed briefs. The motion has been reargued in these briefs. We shall therefore consider that question before entering upon a discussion of the merits.

It appears from the record that the verdict of the jury was rendered September 29, 1922; that the appellant's motion for a new trial was denied December 30, 1922. Appellant's notice of appeal was served and filed on June 30, 1923. The bill of exceptions as settled by the court was served on counsel for respondent on November 20, 1923. No notice of the overruling of appellant's motion for new trial was ever served. No orders were made by the court extending the time for preparing and serving the proposed bill of exceptions. Section 6969, Comp. Laws Utah 1917, provides that a party litigant desiring to have exceptions taken at the trial settled in a bill may, within 30 days after service of notice of the entry of judgment if the action be tried without a jury, or after service of notice of determination of motion for a new trial, prepare a draft of the proposed bill and serve the same, or a copy, upon the adverse party.

In section 7024 of the same compilation, in the chapter headed "Notices, and Filing and Service of Papers," it is provided that all notices must be in writing.

After serving the notice of appeal, orders were made by this court, based upon stipulation of counsel, extending the time to file the record on appeal with the clerk of this court.

It is the contention of counsel for respondent that the giving of the notice of appeal is a waiver of notice of the order overruling the motion for a new trial, and for that reason the district court lost jurisdiction to settle the bill of excep-

tions. The bill was not served within 30 days after the notice of appeal had been served and filed.

On the other hand, it is claimed by appellant that the time for settling the bill of exceptions did not begin to run until written notice had been served of the overruling of the motion for new trial, and that therefore the court retained jurisdiction to settle the bill. It will be convenient to first consider the arguments of appellant in opposition to the motion.

Reliance is had upon the former opinions of this court. In an early case, *Burlock* v. *Shupe,* 5 Utah, 428, 17 P. 19, the court had occasion to consider a similar question to the one here presented. The contention there was that the trial court had no authority to entertain the defendant's motion for a new trial for the reason that it was not filed in the time allowed by statute. The statute then in force provided that—

"The party intending to move for a new trial, must, within ten days after the verdict of the jury * * * or after notice of the decision of the court or referee, * * * file with the clerk, and serve upon the adverse party, a notice of his intention."

The gist of the court's opinion is indicated by the first headnote, as follows:

"Where, after a decision rendered by the court, a party against whom the decision was made applies for time in which to give notice of his intention to move for new trial, such application is not such a waiver of the notice of decision required by section 536 of the Code of Civil Procedure, as to cause the time for giving notice of intention to move for new trial to begin to run."

In the course of the opinion the court said:

"It does not seem that the provision of the statute that the time to give the notice of the intention begins to run from the time of the notice of the decision, and that notices must be in writing, could be held to mean that mere knowledge is notice. Where the party has knowledge, and acts in the manner pointed out in the statute as to follow the notice, there would be good reason to treat his action as a waiver of the notice, or as equivalent to the notice. But we are not prepared to say that anything short of doing something which the statute points out as to follow or be preceded by the notice, would be or could be treated as a waiver of the notice. The party must do some affirmative act pointed out in the statute as not necessary to be done until after the notice."

That opinion follows the opinion of the Supreme Court of California in *Biagi* v. *Howes*, 66 Cal. 472, 6 P. 100. The rule laid down in these cases has been adhered to in two later decisions of this court. The California court, in *Biagi* v. *Howes*, supra, said:

"This is much the best rule. It is more certain and definite, prevents controversies which, under any other construction, would be likely to arise, and above all accords in our opinion with the intention of those enacting the statute."

The authority of *Burlock* v. *Shupe* was recognized by this court in *Mercantile Co.* v. *Glenn*, 6 Utah, 139, 21 P. 500, and *Everett* v. *Jones*, 32 Utah, 489, 91 P. 360. In the *Everett Case* the language of the *Burlock Case* that "the party must do some affirmative act pointed out in the statute as not necessary to be done until after the notice" is recognized as the settled practice in this state under a statute such as the one now under consideration.

The Superior Court of New York, in *Fry* v. *Bennett*, a case reported in 16 How. Prac. 402, in discussing a provision of the act of procedure requiring written notice, says:

"First, to make the condition of the limitation so plain that there should be no danger of misconstruction or misapprehension. And, second, to place it in the power of the prevailing party to set the time running within which an appeal shall be taken, whenever he may choose. By this means each party is placed in a situation to know distinctly and clearly what is the actual state of the controversy in this respect. The losing party will not be taken unawares and be deprived of a right of review, and the prevailing party will know precisely when the right of review is waived or lost."

Reliance is had by respondent upon certain language found in the decision of this court in *State ex rel.* v. *District Court*, 38 Utah, 138, 110 P. 981, Ann. Cas. 1913B, 437; but that opinion does not overrule or attempt to overrule *Burlock* v. *Shupe*, supra, or *Everett* v. *Jones*, supra. On the contrary, the decision in that case refers to the former two cases as supporting the conclusion reached.

It was within the power of the respondent at any time after December 30, 1922, by serving notice, to start the running of the time within which the bill of exceptions could be

settled by the trial court. The giving of the notice of appeal is not contingent upon any notice of the decision. The time for appeal cannot be extended, and the time expires six months after the judgment becomes final, whether any notice of entry of judgment or of the ruling on the motion for new trial is served or not. *Minneapolis Threshing Mach. Co. v. Fox et al.*, 52 Utah, 101, 172 P. 699. The taking of the appeal, therefore, cannot be said to be an act or conduct on the part of the appellant which was not required or necessary to be done until after service of the notice of the overruling the motion for new trial. At most, it is only a matter of procedure, and the procedure having been stated and accepted by the bar of the state as announced in the foregoing cases, no good reason appears why the rule should be changed, especially in view of the fact that the successful party always has it in his power to start the running of the statute. The rule tends to regularity; it does not present doubtful questions as to whether this or that act could be considered a waiver, and deprives no one of any substantial right. Tested by the decisions of this court announced in 5 Utah, 428, 17 P. 19, and subsequent cases founded upon the earlier rulings of the Supreme Court of California and the Superior Court of New York, we are clearly of the opinion that the order of the court, in the preliminary stages of this appeal, denying the motion to strike the bill of exceptions, should be adhered to.

Passing now to the merits.

Appellant discusses at some length the weight of the evidence. It ought not to be necessary to repeat that this court, in law cases, is not permitted under the Constitution or statutes to weigh evidence. If there is any substantial competent evidence in the record to support the court's findings or the verdict of the jury, the judgment will not be disturbed in the absence of some error of law prejudicial to appellant.

There is ample evidence to support the verdict.

Error is assigned respecting the admission of certain testimony. These errors are without substance.

No exception was taken by either party to the court's instructions. The only legal question requiring consideration is certain proceedings after the case had been submitted to the jury.

It appears that the case was given to the jury at about noon on September 29, 1922. At 6:10 on the afternoon of the same day the court was notified that the jury desired to come into the courtroom for further information. It likewise appears from the remarks of the court in passing upon a subsequent motion that he notified the clerk to communicate with counsel for the respective parties, and that the clerk reported to the court, within a few minutes, that he could not get into communication with counsel. Thereupon the jury was brought into the courtroom and the court inquired whether they had arrived at a verdict. The foreman replied that they had not, but thought they would be able to do so. The court then admonished the jury that some time had been spent in taking testimony and expressed the hope that they would be able to arrive at a verdict. Thereupon a juryman asked if a question was permissible and was advised by the court that it was if it related to the trial of the case. The juryman then said:

"We are in doubt to some extent of the testimony that was given by Mr. Skeen, being on the dike or the dam. He said it would have taken only 30 minutes to make a hole through that dam. Now there was a dam about a half a block east from where the roadway was, and we are in doubt, if he meant the dam he was on, if he really was on the roadway."

The court, in reply, said:

"Without discussing the matter, I will just ask the reporter to read Mr. Skeen's testimony to you, and then you may consider it in the light of the testimony. Will that answer the question? Mr. Reporter, you may read the testimony of Mr. Skeen; so much of it as the jury desires to hear."

At the conclusion of the reading of the direct testimony of the witness Skeen, the court said: "All the direct examination read." The foreman of the jury answered: "I think that is sufficient." The court then asked: "Is that satisfactory to all of you?" One juryman replied that it was not, that there was one other question, but that he pre-

ferred that the plaintiff be not present. (The plaintiff was then in the courtroom.) Thereupon the plaintiff left, and the foreman of the jury, addressing the court, said:

"Your honor, the question came up in regard if there was a damage assessed and this dam or this roadway continued in the present condition, and the water didn't escape, what redress would either one of the people have; would they have to start another suit? Of course that has not been brought out in the testimony of either side, but it was a question that came into our minds, and some of them wanted the question asked."

In answering that question the court said:

"* * * If I understand the question correctly, at this time if the jury felt the plaintiff was entitled to recover you would consider, in computing the amount of damage, the time which has elapsed from the time the dam was built, up to the present time, and award him such damages as you find from a preponderance of the evidence he is entitled to. Then, if it continued to go on in the future, I think he would have cause at some time to bring another action for any damage that might accrue subsequent to this time, in the event the defendant did not correct the injury which existed, if you find it does exist. In other words, you assess the damage up to the present time, and from now on up to some future time would be material for some future damage or lawsuit. * * *"

It appears by affidavit undisputed that the appellant knew nothing of this interview between the court and the jury, nor of the instructions given until November, 1923, approximately nine months after the motion for a new trial had been denied. Thereupon the appellant filed a petition asking the court to allow her an exception to the order of the court permitting the reading of the testimony of the witness Skeen on direct examination without reading the cross-examination, also an exception to the oral instruction of the court given at the time, in answer to the question propounded by the foreman of the jury, and to the whole of the remarks of the court in answer to that question. Further, to allow an exception to the oral instruction that if the jury found for the plaintiff they could assess the damages up to the time of giving said instruction. Arguments were heard on the motion, and the court made an order granting the appellant exceptions to the failure of the court to have read to the

jury the cross-examination of Mr. Skeen, after his direct testimony had been read. Also that the appellant be allowed exceptions to the oral instructions given at the time and to each and every part thereof. The procedure of the court and the giving of the instructions are assigned as error, and, as indicated, constitute the only serious question in the case.

In section 6811, Comp. Laws Utah 1917, it is provided:

"After the jury have retired for deliberation, if there be a disagreement among them as to any part of the testimony or if they desire to be informed of any point of law arising in the cause, they may require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the parties or counsel. Such information must be given in writing or taken down by the stenographer."

As indicated, neither counsel for appellant nor counsel for respondent were present, and they were not notified that the jury desired further information or further instructions as to the law of the case, although it does appear that the court instructed the clerk to make an effort to communicate with counsel.

It appears that the dam or dike complained of was constructed along the east boundary of appellant's land, just west of the boundary line of respondent's land. It also appears, without much controversy, from witnesses well informed, that at about the place where this dam or dike was constructed for many years an old roadway had existed. As indicated in the question by the juryman, some distance east of that roadway, on the land of respondent, there existed a dike or dam, running across, or at least partially across, the same depression in the land. The question of the juryman indicates that there was a doubt in the minds of some of the jurors whether the witness Skeen had been on the roadway or on the dam or dike further east on respondent's land. The cross-examination of Mr. Skeen, covering a number of pages in the transcript, was very largely directed to an attempt to show he was not on this roadway at all. He repeatedly stated that he did not observe any roadway there. Mr. Skeen was an important witness, testifying in rebuttal after defendant had closed her case. It was therefore doubly important that

if this witness' testimony was to be selected and read separate from all other testimony bearing on that particular question, his entire testimony should have been read to the jury, notwithstanding the jury expressed themselves as satisfied with what had been read.

The Court of Appeals of Colorado, in *Hersey* v. *Tully,* 8 Colo. App. 110, 44 P. 855, in considering the action of the trial court in permitting certain testimony to be read to the jury after the case had been submitted, said:

"But, without regard to any question of the legal effect of this testimony, it was serious error to permit it to be read to the jury after the case had been submitted to them. They thus heard a portion of the plaintiff's testimony twice, and the last time disconnected from all the other evidence, so that they went back to their room with their memories refreshed as to this; and having listened to it out of its connection, they would be liable to give it an importance to which it was not entitled, and which they would not have given it otherwise."

Courts generally do not favor permitting any one witness' testimony on a particular question, where there is other testimony in the record bearing upon the same question, to be read to the jury after a case has been submitted. In any event, it is of doubtful procedure to permit the reading of part only of one witness' testimony bearing on a question when all of that witness' testimony on the same subject, whether direct or cross, is not caused to be read, and especially when the testimony is read in the absence of counsel. The statute apparently is mandatory in requiring additional instructions or additional testimony to be given in the presence of, or after notice to, the parties or counsel.    3 In this case there had been much other testimony bearing on the same question. It was important in the case for the reason that if the dike built on plaintiff's land had caused the water to back up and flood his land, then necessarily no damages could be imputed to defendant, even though she had constructed a dam as claimed by plaintiff. There is, however, another reason why in our judgment the verdict of the jury will have to be set aside.

The court, in its third instruction, advised the jury that the measure of compensation or general damages, in the event

the jury found that plaintiff was entitled to recover dam-
ages, was the difference between the market value of the
land at the time and immediately before the alleged con-
struction of the dam or dike referred to in the complaint and
its market value at the time of bringing the action. He am-
plified that instruction by stating that if the jury found for
the plaintiff the depreciation in the market value of the
lands of plaintiff, caused by the construction and mainte-
nance of the dam, was the measure of damages. As stated
above, all parties seemed to have been satisfied with that in-
struction and no exception was taken by counsel for
appellant. Manifestly a verdict for respondent under
that instruction would have been a defense to any
future action by respondent based upon any injury resulting
from the water flooding his land caused by the dam in ques-
tion. In the oral instruction given when the jury returned
into court, the jury were advised that its verdict would not
affect future damages. These two instructions render it im-
possible to determine whether the jury was controlled in the
amount of damages awarded by the third instruction or by
this later oral instruction. If the case had been submitted
on the theory that the damages were to be assessed for past
damage and not to include any future damage, then the oral
instruction was erroneous in advising the jury that they were
permitted to consider damages up to the time of giving the
instruction, and not up to the date of filing the complaint.
The language of the oral instruction is "the present time."
The case apparently was tried upon the theory that the
measure of damages was the difference in the market value
of the land before it was flooded and afterwards. It may
therefore be seriously doubted whether there is any testimony
in the record to support the oral instruction.

It may be claimed that the oral instruction was more favor-
able to appellant than the general instructions, but, as stated,
all parties seemed to have been satisfied with the in-
structions given before the case was submitted, and it
may well be that appellant was content, if a verdict
was found against her, to have such verdict fix damages so
that future litigation would be avoided, and since the court

had submitted the case upon that theory she was entitled to rely upon that being the result of the verdict, whether for or against her.

We need not determine whether the giving of the instruction and the reading of the testimony in the absence of counsel would of itself constitute reversible error in the absence of some showing that prejudice had resulted. **6** But permitting or causing to be read to the jury the direct testimony of a witness without having the cross-examination read, and the giving of an instruction which is in conflict with former instructions, are such error as in our opinion must of necessity result in a reversal of the judgment and the granting of a new trial.

Such will be the order; neither party to recover costs.

FRICK, J. (dissenting). I regret that I am unable to concur with my associates in the conclusions reached by them. As a general proposition dissenting opinions may be said to be stillborn, and hence fruitless. In important cases, however, they afford the dissenting member an opportunity of expressing his views respecting the questions involved and to give his reasons why, in his judgment, the conclusions of the majority should not prevail. Ordinarily I deem it my duty to yield to the judgment of my associates. There are, however, instances where to do that involves more than a mere reconciliation of conflicting views. This case presents such an instance. In view of this I deem it my duty to state as briefly as possible the facts and my reasons for nonconcurrence.

The judgment in this case was entered September 21, 1922. Motion for new trial was denied on December 30th, at which time the judgment became final and appealable. The notice of appeal was served and filed June 30, 1923, and just within the six months' period within which appeals must be taken under our statute. The proposed bill of exceptions was served November 20, 1923, or four months and twenty days after the notice of appeal was served and filed. No orders extending the time for preparing and serving the proposed bill of exceptions were either applied for or made in

the district court. The case was tried to a jury, and the judgment is based upon the verdict. Comp. Laws Utah 1917, § 6969, so far as material, provides:

"When a party desires to have exceptions taken at a trial settled in a bill of exceptions, he may, within thirty days after the entry of judgment if the action were tried with a jury, * · * * or after service of notice of the determination of a motion for a new trial, prepare a draft of a bill and serve the same," etc.

If therefore there is no motion for a new trial, the proposed bill must be served within 30 days after the entry of judgment without any notice; but if there is a motion for a new trial filed, then the proposed bill need not be served until within a period of 30 days after service of notice that the motion for a new trial has been denied.

In the instant case no notice of the determination of the motion for a new trial was ever served, and hence it is contended that there was no limit of time within which a proposed bill was required to be prepared and served.

To that effect is the conclusion of my associates, which, it is contended, is sustained by a decision of the Supreme Court of the territory of Utah, namely, *Burlock* v. *Shupe,* 5 Utah, 428, 17 P. 19, decided in 1888, and which case, it is further contended, was followed by this court in *Everett* v. *Jones,* 32 Utah, 489, 91 P. 360.

In the first case cited it was held that where a party to the action was present in court when the decision was rendered against him, and at which time he asked for and was granted an extension of time within which to file a motion for new trial, he, by that act, did not waive the service of the notice required by the statute of the rendering of the decision and that he was not legally required to file his motion for a new trial until such notice was served upon him. Precisely to the same effect is the case of *Everett* v. *Jones,* supra. The *Everett Case,* as appears from a statement in the opinion, merely follows the rule in *Burlock* v. *Shupe,* and if it had not been for the former decision the result in *Everett* v. *Jones,* as appears from the decision itself, would have been different. The court said:

"Were the question an open one in this jurisdiction, we would be inclined to hold with him."

That is, with the party opposing the rule laid down in *Burlock* v. *Shupe*, supra. It will be observed, therefore, that this court reluctantly followed *Burlock* v. *Shupe*, supra, in which case it was held that mere knowledge, although obtained in open court, that a decision in a suit was rendered, was insufficient to set the time running within which a party must act. It is, however, clearly intimated in both *Burlock* v. *Shupe* and *Everett* v. *Jones* that a party may, nevertheless, waive the statutory notice. In *Burlock* v. *Shupe*, in speaking of waiver, the court said:

"Where the party has knowledge, and acts in the manner pointed out in the statute as to follow the notice, there would be good reason to treat his action as a waiver of the notice, or as equivalent to the notice. * * * The party must do some affirmative act pointed out in the statute as not necessary to be done until after the notice."

While the foregoing language is somewhat obscure, yet it is clear enough that what the court meant is that if a party takes some affirmative action or step without the notice which he would have been required to take if the notice had been given, such affirmative act constitutes a waiver or is the equivalent of notice. The purport and effect of the decision in *Burlock* v. *Shupe* is clearly pointed out in a later case, namely, *Grant* v. *District Court*, 38 Utah, 138, 110 P. 981, Ann. Cas. 1913B, 437. Moreover, the facts in the later case bring that decision much nearer to the precise question involved in the instant case than do the facts in *Burlock* v. *Shupe* and in *Everett* v. *Jones*. In the *Grant Case* a judgment had been entered against one Jeppson and without waiting to be served with notice of the entry of judgment, as he had a right to do, he filed a motion in which he asked the court "for an order vacating and setting aside the judgment herein," etc. In that case Jeppson was not required to appeal until 30 days after being served with notice of the entry of judgment. He, however, filed his motion to set aside the judgment, and it was accordingly held that by that act he had waived the service of the notice of the entry of judgment. In

the *Grant Case* the authorities are collated and some of them reviewed upon the question of what constitutes a waiver of notice under statutes like or similar to ours. In the course of the opinion the following language from 1 Spelling, New Tr. & App. Pr. § 363, is approved and adopted by this court:

"It may not only be waived, but the party entitled to notice may do that which will estop him from denying that he has not been notified of the decision according to the statutory requirements. But even in that case his act may with propriety be spoken of as a waiver. It constitutes a clear case of waiver for the movant to serve and file his notice of intention, or *file any paper reciting the filing of findings, without waiting to receive notice of the decision.*" (Italics ours.)

The following language from the opinion in *Gardner* v. *Stare*, 135 Cal. 118, 67 P. 5, is also approved and adopted:

"A written admission by the party entitled to notice, of knowledge that the decision had been made, filed with the clerk or entered upon the minutes of the court, would supersede the necessity of giving such notice; and a motion to the court or other proceeding by a party, with reference to the decision, which presumes his knowledge that it has been made, and by which he seeks to protect his own interest against the rights of the other party under the decision, will be regarded as a waiver of his right to a notice of the decision."

Also, the following from Hayne, New Tr. & App. p. 79:

"Where the party not only has knowledge but acts upon such knowledge, and such action appears of record, there is a distinct act of waiver—the written notice which would otherwise have been necessary is dispensed with by the act of the party. But in order to constitute a waiver there must be some act. Mere knowledge is not an act. * * * And it is certainly true that notice may be waived by acting upon knowledge of the decision."

It was accordingly held that inasmuch as in both *Burlock* v. *Shupe* and *Everett* v. *Jones* it was intimated that under certain circumstances the notice would be held to have been waived in view that Jeppson had assailed the judgment by an affirmative motion, for that reason he had waived the service of notice of the entry of judgment.

In a still later case, namely, *Jensen* v. *Lichtenstein*, 45 Utah, 331, 145 P. 1036, the question of serving notice of decision in order to fix the time within which a proposed bill

of exceptions had to be served was again before this court. In that case neither party was satisfied with the judgment and they both appealed. Plaintiff's attorney had, however, prepared the findings of fact and conclusions of law stating the court's decision under the direction of the court, and the same were filed and judgment entered accordingly. The defendant appealed first, but only included so much of the evidence and proceedings in his proposed bill of exceptions as he deemed necessary for his appeal. The plaintiff then also appealed, and, in view that the bill of exceptions was insufficient for his purposes, he also prepared and served his proposed bill of exceptions. Defendant objected to plaintiff's bill because it was not prepared and served within the time fixed by statute. Plaintiff's counsel, however, insisted that he had never been served with a notice of the decision, and therefore the time for serving a proposed bill of exceptions had not expired. Indeed, he insisted precisely what is contended for in the instant case, namely, that in view that no notice of the decision had been served upon him the time had not yet commenced to run. In the course of the opinion this court referred to the purpose of the notice of decision which is required to be served and under what circumstances such notice may be waived. The court said:

"Now, is it reasonable to suppose that the party who prepares and serves the notice, which must contain a statement of the time that the decision was filed, is entitled to a further notice of what he must be conclusively presumed to know? Is not the notice which he prepares and serves upon his adversary also notice to him of what it contains? Why should it be held to impart notice to the person upon whom served but not upon him who is required to prepare and serve it? As already intimated, to so hold would, in our judgment, lead to an absurdity."

Let me pause here a moment to see just what the state of the record is in the case at bar. On June 30, 1923, the defendant, omitting the caption and the names of the persons against whom the notice was directed, served the following notice:

"Please take notice that the defendant Lottie M. Stephens hereby appeals to the Supreme Court of the State of Utah from that certain judgment made and entered in this action on verdict

in open court on the 29th day of September, A. D. 1922, in favor of the plaintiff and against the defendant Lottie M. Stephens and from the whole thereof, which said judgment became final by decision on motion for new trial made therein by the defendant and overruled by the court on the 30th day of December, 1922. This appeal is made upon questions both of law and of fact. Dated, June 30th, A. D. 1923."

Service of the foregoing notice was acknowledged on the same day. The foregoing notice was prepared, served, and filed by the defendant. The purpose of serving it was to assail the very decision and judgment of which she now contends she was entitled to notice. What possible function could notice of the decision perform after the foregoing notice was prepared, served, and filed by defendant herself? Of what fact would such a notice impart notice to defendant of which she did not already possess full and complete notice? What is the purpose of a notice of decision? Is it not to inform defendant that a decision had been entered in the case, and hence if she was dissatisfied with it she could act accordingly? Manifestly, if defendant was satisfied with the decision, notice thereof, so far as settling a bill of exceptions is concerned, would have been as useless an act as it would have been to impart additional notice to her of the decision after she had prepared and served the foregoing notice. Can it be contended that in any possible view the foregoing notice was not sufficient to apprise defendant of the fact that a decision had been entered in the case? Why, then, require a further notice to the same effect? Again, did defendant not do the very act which in the very nature of things constituted a waiver of notice on her part? Is not serving a notice of appeal in which is necessarily and unavoidably included all the facts of the decision the equivalent of notice of decision, as stated in *Burlock* v. *Shupe,* the case most strongly relied on by both defendant and my associates? Yet it is expressly stated in that case that in case the party entitled to notice of decision takes any action which is "equivalent to the notice," he will be deemed to have waived service of notice of decision. Would not the giving of a further notice of decision to defendant after she had knowingly and intentionally

prepared and served the notice of appeal, which I have here-
inbefore set forth, be a mere repetition of what had gone be-
fore and therefore, as a legal notice, constitute a sheer ab-
surdity?

In this connection I, however, also desire to examine into
the state of the cases from our sister state California which
were relied on by the territorial court in *Burlock* v. *Shupe,*
and which, it seems, are still relied on by my associates in
connection with later California cases.

In *Burlock* v. *Shupe,* the case of *Biagi* v. *Howes,* 66 Cal.
469, 6 P. 100, is the principal case relied on. Indeed, an ex-
amination of the California cases cited shows that to be the
principal case. That case was decided in 1885, while *Burlock*
v. *Shupe* was decided in January term, 1888. After *Biagi* v.
*Howes* was decided, however, and before the decision was
handed down in *Burlock* v. *Shupe,* the Supreme Court of
California, in May, 1886, decided the case of *Mullally* v.
*Irish-American Ben. Soc.,* 69 Cal. 559, 11 P. 215. Later that
case was followed by the cases of *Gray* v. *Winder,* 77 Cal.
525, 20 P. 47; *Wall* v. *Heald,* 95 Cal. 365, 30 P. 551; *Dow*
v. *Ross,* 90 Cal. 562, 27 P. 409; and *California Imp. Co.* v.
*Baroteau,* 116 Cal. 136, 47 P. 1018. In all of the foregoing
California cases the question respecting the service of notice
and waiver is considered, and in all of them the Supreme
Court of California refused to follow the decision in *Biagi* v.
*Howes,* supra, to the full extent but held to a modified rule.
Finally, in the case of *California Imp. Co.* v. *Baroteau,* su-
pra, the case of *Biagi* v. *Howes* and the later California cases
to which I have referred were again considered, and the
court, in the *California Imp. Co. Case,* took the position that
perhaps the decision in *Biagi* v. *Howes* might be distinguished
from the decisions in the later California cases, but the
court, in referring to *Biagi* v. *Howes,* said: "If it cannot be
so distinguished, it must be held as overruled by the later"
cases above. By the term "later cases above" is meant the
California cases I have cited, and especially the case of
*Mullally* v. *Irish-American Ben. Soc.,* supra. It will thus be
seen that the court refused to follow *Biagi* v. *Howes,* and

that it did so upon the strength of a decision which was rendered about two years before the decision in *Burlock* v. *Shupe* was handed down, namely, the case of *Mullally* v. *Irish-American Ben. Soc.*, supra, decided in 1886. The question of waiver in California, therefore, is precisely the same as it is held to be by this court in the *Grant* and *Lichtenstein Cases*, namely, that an act such as the defendant took in the instant case by serving a notice of appeal clearly constitutes a waiver of notice of decision.

It is, however, suggested that the notice of decision performs a useful purpose in that it fixes the time from which the 30-day period named in the statute begins to run. Is it not pertinent to ask how does such a notice fix the time any more certain than does the serving and filing of a notice of appeal? The statute is silent with regard to what shall be done with a notice of decision, but is not so respecting the notice of appeal. The notice of appeal, after service, must be filed and made a part of the record in the case. Indeed, if the record in this court does not show the service and filing of the notice of appeal, the appeal cannot be maintained. When it comes to the question of certainty, therefore, the service of notice of appeal is quite as certain as, and in my judgment more certain than, is the notice of decision. In either case the time necessarily must begin to run from the date that the notice was served.

Let me, however, again pause for a moment to inquire into the effect of the decision of the majority in this case. Up to the present time this court has consistently and persistently held that the time for taking an appeal cannot be delayed or extended beyond the period of six months from the entry of judgment, regardless of whether any notice of decision was served or not. Again, it has been held that a motion for a new trial must likewise be filed and served before the six months' period for taking an appeal has elapsed and that such must be done whether notice of decision was served or not. The following cases cover every possible phase of the propositions just stated: *First National Bank* v. *Nielsen*, 60 Utah, 227, 208 P. 522; *Emerson-Brantingham Imp. Co.* v. *Stringfellow*, 57 Utah, 284, 194 P. 340; *Minneapolis Thresh-*

*ing Mach. Co.* v. *Fox,* 52 Utah, 101, 172 P. 699; *Fisher* v.
*Bonneville Hotel Co.,* 55 Utah, 588, 188 P. 856, 12 A. L. R.
255; and *Wayland* v. *Woolley,* 61 Utah, 287, 213 P. 200. Our
statute and the foregoing decisions are .all intended to pre-
vent undue delay in perfecting appeals to this court and to
the end that the same shall be speedily determined. True it
is that after an appeal has been taken appellant may obtain
all the time that is actually necessary to prepare his record
on appeal, but he must do that by making timely application
either to the trial court or to this court. In either court he
must show good cause for delay. Delay, if any, is then con-
tinually under the surveillance of the courts, and if the time
is .frittered away for mere delay the appeal may be dis-
missed.

Now, what is the effect of the ruling of the majority in
this case? The facts speak for themselves. Here the defend-
ant did nothing at all for the first six months. After that
time had elapsed she, as she was compelled to do, served no-
.tice of appeal. In doing that she complied with the statute
and the decisions of this court. Immediately after doing
that, however, she again lapsed into inaction. Finally, after
four months and twenty days had elapsed from the time
defendant served her notice of appeal, she served her pro-
posed bill of exceptions. This was more than four times the
time allowed her under the statute. During all that time she
failed to make any application for any extension of time or
to show any cause why the time for perfecting her appeal
should be delayed. She then takes the whole matter into
her own hands, and when she is called to account for her un-
usual delay she merely insists that she had never been served
with notice of the decision from which she had appealed and
hence was not required to act when she did act. In other
words, unless she .volunteered to present her appeal to this
court she was not required to do so until and unless she was
served with notice of the decision. This court now solemnly
declares that such is the law and suggests that if the plaintiff
in this case desired speedier action he should have served the
notice of decision. That is, the plaintiff should have served

notice upon the defendant that the decision from which she
(the defendant) was appealing had been rendered and had
become final although the defendant had fully described
such decision in her notice of appeal and in that notice had
·also stated the very day upon which said decision had be-
come final and appealable.   No doubt all this is so held be-
cause it is assumed that it was comparatively an easy matter
for the plaintiff to serve such a notice.   That in this case
may have been true, but was it not just as easy for the de-
fendant to obtain an extension of time to prepare and serve
her proposed bill of exceptions and thus show her good
faith in taking the appeal?   This, however, is not the only
case that is governed by this decision.   A party to an action
after judgment in his favor may well pay his attorney and
discharge him, and if his adversary refused to pay depend
upon the officers of the law to collect the judgment.   True,
under the statute, a party cannot discharge his attorney so
that a notice relating to the case after judgment may not be
served upon such attorney by the adversary party but he
need not retain the attorney for the purpose of taking any
affirmative action in the case after judgment in his favor.
Moreover, the attorney may die, or may leave the state, or
may be absent therefrom, or cease to act as an attorney, and
yet in any and all circumstances the party in whose favor
the judgment is rendered must act affirmatively or lose his
rights under the statute to expedite an appeal that must be
taken within six months.   Is it not quite pertinent to ask
why is an appeal taken if it is not intended to perfect it in
accordance with the provisions of the statute and the rules
of practice?   Then again, how long may an appellant delay
action after serving his notice of appeal?   So far as the
decision of the majority is concerned it may be without limit,
and such would be the case even though the party in whose
favor the judgment was rendered had died and only his
heirs were concerned.

Finally, it is suggested that plaintiff's attorneys in this
case made no objection that the plaintiff be given additional
time to file his transcript on appeal in this court.   If the

decision were based upon the ground that plaintiff's counsel had waived their right to object to the settling of the bill of exceptions in this case, I perhaps might not have devoted so much of my time to writing this dissenting opinion. While perhaps there might be valid objection to that proposition, yet, in view that it could affect only this appeal, I might have overlooked the matter entirely. But why could not plaintiff's counsel consent to what defendant's counsel could have obtained from this court by making a proper application? Moreover, the mere fact that plaintiff's counsel consented to extending the time for filing the transcript in this court did not even remotely involve the question of settling the bill of exceptions. The defendant had the same right to present his appeal upon the judgment roll without a bill of exceptions as she has to do so with a bill of exceptions. In either event the transcript would have to be filed in this court, and the time to so file it might be extended.

I am utterly unable to conceive any legal or adequate reason upon which to base a conclusion that the defendant by serving the notice of appeal which I have hereinbefore set forth did not waive the service of notice of decision, and hence I am forced to dissent from the conclusions of my associates.