## MARK MFG. CO. v. JOSEPH NELSON SUPPLY CO. et al.

No. 4249.   Decided May 9, 1925.   (237 P. 223.)

1. EXCEPTIONS, BILL OF—RESPONDENTS CANNOT OBJECT THAT APPELLANT'S BILL OF EXCEPTIONS NOT SETTLED AND CERTIFIED WITHIN TIME REQUIRED BY STATUTE, WHERE NO NOTICE OF DECISION SERVED ON APPELLANT. The service of notice of decision is a prerequisite to starting running of statute requiring bills of exception to be settled and certified within 30 days, and taking of an appeal does not start statute running, and, where no notice of decision was served on appellant, respondents cannot complain that appellant's bill of exceptions was not settled and certified within 30-day period.[1]

2. RECEIVERS—MERE INADEQUACY OF PRICE INSUFFICIENT TO SET ASIDE SALE WHERE SALE WAS REGULAR. Where a receiver's sale has been regular, mere inadequacy of price is insufficient to authorize court to vacate it, unless inadequacy is so gross as to imply fraud or to shock the conscience.[2]

3. RECEIVERS—SALE VACATED AND NEW BIDS CALLED FOR, WHERE PRICE INADEQUATE AND IRREGULARITIES OCCURRED. Where unfairness or irregularities enter into a receiver's sale, and in connection therewith there is inadequacy of price, court will vacate sale and call for new bid, so as to afford all concerned a full and fair opportunity to offer additional bids.

4. RECEIVERS—COURT HELD TO HAVE PROPERLY VACATED RECEIVER'S SALE AND CALLED FOR NEW BIDS, IN VIEW OF INADEQUACY OF PRICE AND IRREGULARITIES WHICH OCCURRED. In receivership proceedings, court *held* to have properly vacated receiver's sale and called for new bids, in view of inadequacy of price and many irregularities which occurred.

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea*, Judge.

[1] *Jenkins* v. *Stephens*, 64 Utah 307, 231 P. 112.

[2] *Joseph Nelson Plumbing & Heating Supply Corp.* v. *McCrea*, Dist. Judge, 64 Utah 484, 231 P. 823.

Headnote 1.   4 C. J. p. 278.
Headnote 2.   34 Cyc. p. 325.
Headnote 3.   34 Cyc. p. 324.
Headnote 4.   34 Cyc. p. 324.

Appeal from Third District

Action by the Mark Manufacturing Company against the Joseph Nelson Supply Company and others, in which a receiver was appointed for defendant named, and receiver's sale directed. From orders or judgments vacating alleged receiver's sale, and refusing to confirm it, and directing that property be readvertised and resold by receiver, and from confirmation of such sale, the Joseph Nelson Plumbing & Heating Supply Corporation appeals.

AFFIRMED.

*Hurd & Hurd* and *Geo. C. Buckle,* all of Salt Lake City, for appellant.

*Booth, Lee, Badger, Rich & Rich,* of Salt Lake City, for respondents.

FRICK, J.

The Joseph Nelson Plumbing & Heating Supply Corporation, hereinafter called appellant, appeals from an order or judgment of the district court of Salt Lake county, by which said court vacated an alleged receiver's sale, and from its refusal to confirm the same, and also appeals from the order or judgment of said court directing that the property in question be readvertised and resold by the receiver, and from the confirmation of said sale.

The matter relating to the vacating of the first sale, which will be referred to more particularly hereinafter, and the refusal of the court to confirm the sale, was before this court on application by appellant for a writ of mandate and for a writ of prohibition. *Joseph Nelson Plumbing & Heating Supply Corp.* v. *McCrea, Dist. Judge,* 64 Utah 484, 231 P. 823, where both writs were denied upon the ground that the appellant had a speedy and adequate remedy by appeal. The former proceedings, however, were commenced before the property was resold, and this appeal, as before stated, is from the refusal of the court to confirm the first sale and also from the confirmation of the final sale.

Respondents have interposed an objection to appellant's bill of exceptions, in which the evidence and proceedings relating to both sales are certified to this court upon the ground that the same was not settled and certified to within the time required by our statute.

No notice of decision was served on appellant. In view of that, the 30-day period within which a proposed bill of exceptions must be served on the adverse party was not set in motion. That question was settled by this court in the recent case of *Jenkins* v. *Stephens,* 64 Utah 307, 231 P. 112, where it is held that the serving of a notice of decision is a prerequisite to starting the statute to running, unless the service of such notice is expressly waived by the adverse party. It is further held that the taking of an appeal does not start the statute to running. This case comes squarely within the rule there announced, and hence the objection to the bill of exceptions must be overruled.

The facts material to this appeal, briefly stated, are these:

On the 18th day of July, 1922, in an action commenced by the Mark Manufacturing Company, nominal plaintiff here, against the Joseph Nelson Supply Company, a corporation, hereinafter called company, one T. A. Williams was appointed receiver of said company. The receiver immediately took possession of all of the assets of the company, and, at the request of the principal creditors, and under the direction of the court, took charge of the business carried on by the company with the view of ultimately liquidating its debts. The receiver, under the direction of the court, carried on the business of the company for a period of about two years, when he became convinced that he was not making any progress in paying off the debts of the company, although he had been able during that time to increase its assets to some extent. Accordingly, in August, 1924, the receiver filed a petition in said court, setting forth the facts relative to the conduct of said business, and stating the amount of the assets and liabilities of the company. In his petition it was made to appear that, while the assets had been increased, the liabilities to creditors had increased to a

larger extent, and that the assets were wholly insufficient to pay the debts in full. The receiver, after stating the facts in that regard, further stated that in his judgment it was not for the best interests of the creditors to attempt a continuance of the business of the company by the receiver, but that it was for the best interests of the creditors that all of the assets of the company be sold and the proceeds be ratably distributed among the creditors. The district court, after considering the petition of the receiver, on the 8th day of August, 1924, entered an order that all of the assets of the company be sold by the receiver, and that he immediately publish notice for bids, which notice should be published for a period of 40 days. Pursuant to such order the receiver published a notice that he "will receive written bids on or before September 17, 1924, for the whole or any part of the assets" of the company. He also gave information in such notice to whom and where said bids should be directed. Just before the 40 days expired, the court, upon application, made and entered an order extending the time within which bids must be made for an additional 30 days. The publication of the original notice was accordingly continued for another 30 days, and the receiver asked for written bids as before to be made on or before October 17, 1924.

Pursuant to the notice ending on October 17, 1924, the receiver received three written bids, all of which are contained in the record. After receipt of the bids, to wit, on October 20, 1924, the receiver duly informed the court of the receipt of said bids by filing a written report to which said bids were attached, and in the report the receiver also advised the court which of the three bids, in his judgment, was the highest and best bid, and asked that the highest bid be accepted, and that the sale be confirmed by the court. After the bids and the report of the receiver had been filed, the court ordered the receiver to publish a notice to the parties to the action and to the creditors of the company. The receiver thereupon published a notice to all concerned that written bids had been made and received by him, setting

forth in the notice the terms and amounts of the bids and the names of the bidders, and also set forth in said notice that on November 1, 1924, a hearing would be had in said court upon the sale of the assets of the company to the highest bidder, whose name was stated in the notice, and upon "the recommendation of said receiver that such sale be confirmed and approved." The hearing was, however, continued from the 1st to the 8th of November. On the 8th of November, 1924, the matter came on for hearing upon the report and recommendation of the receiver.

In the meantime the company whose assets were being sold filed an objection to the confirmation of the sale as recommended by its receiver. Upon objections being made that the company had and could have no standing in court as against the action and report of its receiver, the court, nevertheless, permitted the objections to stand as if they were made by the stockholders of the company. The court then proceeded to hear evidence upon the question whether the sale reported by the receiver should be approved and confirmed. After considerable evidence had been produced on the part of some of the creditors to the effect that the highest bid reported by the receiver was a fair and proper bid, and that the same should be approved and the sale confirmed, the court, for some reason not disclosed by the record, if indeed there was any reason, announced that it would receive new and additional bids from any one present for the assets of the company. The appellant then submitted two bids, both of which were addressed to the receiver. Its first bid was identical in amount and in terms with that of the highest bid upon which the hearing for confirmation was then being had. When appellant's counsel's attention was called to that fact, he frankly conceded that the bid was the same, but insisted that, since the appellant corporation was composed of 90 per cent. of the old stockholders of the company, the stockholders should be given the preference over other bidders. The court, however, indicated that such a preference would not be given, and counsel then submitted a second bid which was also addressed to the receiver. After

appellant's second bid was announced, every one present, including the court, conceded that the same was so bound up with conditions and contingencies that it could not be determined without an analysis of the same whether it was in fact a higher or a lower bid than the one upon which the hearing was had. The court said that it could not determine that fact, and suggested that the bid be referred to the receiver. Pending that suggestion, it seems, counsel abandoned his second bid. At all events, the record does not disclose what became of it, and the only rational assumption is that it was abandoned. Neither does it appear what disposition, if any, was made of the company's objections to the confirmation of the sale upon the bid recommended by the receiver. It seems that the objections were likewise abandoned.

At this point in the proceedings it was suggested by counsel for the respondents that, inasmuch as at least some of the difficulty in bidding arose from the fact that the title to certain real estate, consisting of a lot and dwelling thereon which was alleged to be a part of the assets of the company, was in litigation, and that the case was set for trial within a few days when the question would be settled, therefore the matter on hearing should be continued until that matter was finally settled. Counsel for appellant, however, objected to a continuance, and the court indicated that the matter would have to be concluded on that day, and again called for bids.

After some discussion between counsel for appellant and counsel for the highest bidder, the latter announced that, in view of the trend the proceedings had taken, he could not, without consulting his client, who was the highest bidder, proceed to bid except for a limited amount. It was then suggested by counsel for appellant that bids be offered for the assets exclusive of the lot and dwelling house. Counsel for the highest bidder then raised the highest bid to the extent of $177. Appellant's counsel then raised that bid, when in turn counsel for the highest bidder again raised the bid just made by appellant's counsel. This alternative bidding be-

tween the two counsel continued until appellant's counsel made a bid of $65,000, with the proviso that, in case the receiver succeeded in the litigation, he could then sell the lot with the dwelling house separately, and if he was unsuccessful the $65,000 should be in full payment for all of the assets of the company. The latter bid being the highest bid that had been submitted, counsel for the highest bidder announced that, in the absence of his client, who lived in another state, and without the opportunity of consulting him, he could not offer any further bid. The court then announced that the bid of appellant would be accepted upon condition that $5,000 be paid forthwith and that the balance be paid on or before a certain hour on the following Wednesday, which would be on the 12th of November, and upon further condition that the lot with the dwelling house should not be included in the sale. Counsel for appellant agreed to the conditions imposed, and paid the $5,000, and promised that the balance of the purchase money would be paid as suggested by the court. The court then made the following announcement:

"The matter may be continued then until 9:45 Tuesday morning, and, in the event, of course, that this bidder does not make good on the bid, then we will go ahead and consider other bids —make it Wednesday morning at 9:45, Tuesday is a holiday I understand."

The matter was then continued as stated by the court.

We remark that the lot with the dwelling house was, by some of the parties, assumed to be of the value of $12,000, while the highest bidder and appellant's counsel assumed it to be of the value of $15,000.

On Monday morning, November 10, 1924, certain creditors of the company filed a protest in writing to the confirmation of the sale to appellant, in which they pointed out the fact that the hearing on the 8th of November was for the sole purpose of either confirming or not confirming the sale to the highest bidder as reported by the receiver; that the published notice was to that effect; that by reason of that fact they were not present at the hearing; that they were prejudiced by the court's action in receiving new and

additional bids without notice; and that they guaranteed a bid at least $5,000 in excess of the amount bid by appellant if the assets were again offered for sale. The court set the protest for hearing at noon of the day on which it was filed, of which appellant was given due notice. In the meantime appellant had paid the balance of the purchase upon its bid into court. A hearing was subsequently had on the protest of the creditors aforesaid, at which the court heard all of the parties in interest, and, after the hearing was concluded, the court made the following announcement:

"Well, I am not satisfied, gentlemen, that what has been done is to the best interest of either the creditors or the stockholders, and I am very much inclined to give everybody another opportunity. I don't know just the better way to do this, but I am satisfied in my own mind that the better judgment of all the creditors substantially is that this bid ought not to be accepted. It is not the best and highest bid, in view of all the circumstances, and I am not going to take the responsibility of holding it up over their protests. I am going to give everybody another chance. * * * I am not opening this because somebody is disappointed or dissatisfied. I am opening it up because I am confident that there has been a misunderstanding, and I don't care to assume the entire responsibility of rejecting what appears to be a better opportunity. * * * The order heretofore made is vacated, and the receiver, is directed, in the interest of, as I see it, all the creditors, to proceed as I have now indicated."

Pursuant to the announcement aforesaid, the court refused the application of appellant to confirm the sale upon its bid made on the 8th day of November, 1924, as before stated. The court then directed the receiver to advertise for further bids, which was done. A new bid was submitted to the receiver amounting to $87,500, by the same bidder who had submitted the highest bid prior to the bids that were made at the hearing on the 8th of November, as hereinbefore stated. In the bid of $87,500 was included the lot with the dwelling house, with the proviso, however, that, in case the receiver should fail to have the title vested in him, $15,000 should be deducted from the bid of $87,500, and the remainder of the bid, amounting to $72,500, should be in full payment for all the assets of the company other than the

lot and dwelling house. This bid was thus $7,500 in excess of appellant's bid, and the court, upon recommendation of the receiver, approved the same, and confirmed the sale to the last bidder.

Appellant now insists that the court erred in directing the receiver to call for further bids; that it erred in receiving further bids; that it erred in confirming the sale upon the last bid; that it erred in refusing to confirm the sale upon appellant's bid; and that the evidence was insufficient to sustain the objections to appellant's bid or to authorize the court to disregard the same. These assignments need not be separately discussed, but may be considered together.

Counsel for appellant insist that the sale to appellant was in the nature of a judicial sale; that such sales can only be vacated or set aside for adequate cause, and for such cause only for which sales between private parties can be vacated and set aside. In support of their contention they cite, among other cases, the following: *Files* v. *Brown*, 124 F. 133, 59 C. C. A. 403; *Morrison* v. *Burnette*, 154 F. 617, 83 C. C. A. 391; *In re Burr, etc., Co.*, 217 F. 16, 133 C. C. A. 126; *State National Bank* v. *Neel*, 53 Ark. 110, 13 S. W. 700, 22 Am. St. Rep. 185; *In re Perryman*, 7 Ind. T. 472, 104 S. W. 804; *Pewabic Mining Co.* v. *Mason*, 145 U. S. 349, 12 S. Ct. 887, 36 L. Ed. 732; *Wheeler & Motter Mfg. Co.* v. *Wright*, 64 Okl. 97, 166 P. 184; 16 R. C. L. 82, § 61. While counsel cite many other cases, it is not necessary to refer to them, since those cited herein are the principal ones upon which they rely, and for the further reason that those herein cited are quite sufficient to illustrate the doctrine for which counsel contend.

No doubt the decisions in those cases state the law applicable to the facts and circumstances there involved. They, however, cannot control a case like the one we are now considering. Counsel, in their argument and citation of authorities, constantly assume that the sale to appellant was regular and in accordance with law and the published notice. We have stated what we deem to be the controlling facts with more than ordinary detail, so that the reader may fully

understand the precise questions that we are called on to decide. It will be observed that the time for receiving bids according to the published notice, a copy of which was through the United States mail forwarded to every creditor, had fully expired, and that, according to the notice ordered by the court as published by the receiver, all that the court was authorized to do on the 8th of November, 1924, was to hear the evidence on the receiver's report and his recommendations, and, after doing so, either confirm or decline to confirm the sale recommended by the receiver. Certainly no one was justified in assuming, much less required to assume, that new and additional bids would be received by the court on the 8th day of November, or at any other time, without notice to the creditors and to the public. No one would for a moment contend that, if no notice for bids had been published, a sale made without notice could be sustained. True, in this case ample notice for bids had been published, but the time within which bids were to be made had expired, and the notice that was published merely advised the creditors and all concerned that a hearing would be had upon the sale recommended by the receiver and upon appellant's objections to the confirmation of such sale. The court's request for further bids was, therefore, to say the least, quite irregular and out of the ordinary course. In view of the undisputed facts and circumstances, therefore, it is utterly useless to refer to cases where the sales were regular and where the same had been approved and confirmed by the courts. The cases cited by appellant refer to such cases.

Counsel, however, insist that the mere fact that a bid for an amount in excess of appellant's bid was subsequently made did not authorize the court to set aside the sale the court had made to it on the 8th day of November. In that connection they contend that the overwhelming weight of authority is to the effect that mere inadequacy of price is not sufficient to authorize the court to vacate a sale. No doubt where the sale has been regular the great weight of authority is to the effect that mere inadequacy of price is insufficient to authorize the court to vacate it, and, unless

the inadequacy is so gross as to imply fraud or to shock the conscience, sales should not be interfered with for that cause. This court is already committed **2, 3** to that doctrine. See 64 Utah 484, 231 P. 823, supra. The facts of this case take it far outside of that doctrine, however. Moreover, the authorities are practically uniform that where unfairness or irregularities enter into the sale, and in connection therewith there is inadequacy of price, the courts will not shut their eyes to such irregularities, but will vacate the sale and call for new bids so as to afford all concerned a full and fair opportunity to offer additional bids. The law in that regard is well and clearly stated in 16 Stand. Enc. Proc. pp. 804-809, in the following words:

"Mere inadequacy of price is not sufficient to justify the setting aside of a judicial sale, unless the inadequacy is so great as to shock the conscience, or raise a presumption of unfairness, fraud, or mistake on the part of one interested in the property. This is especially true where there is a right of redemption. But inadequacy of price, accompanied by other circumstances, such as fraud, unfairness in the purchase, or the sale proceedings, accident, mistake, or some irregularity in the sale, or in the judgment ordering the sale, will justify setting aside the sale."

In 12 Enc. Pl. & Pr. pp. 93-97, the law is stated thus:

"The decisions on this subject of inadequacy of price as a ground for setting aside judicial sales are numerous and somewhat conflicting. The authorities, of course, agree that fraud is always a sufficient ground, and further there is a general agreement upon the following propositions: First, that mere inadequacy of price is not in itself sufficient grounds; secondly, that gross inadequacy of price, such as to shock the conscience and raise a presumption of fraud, is sufficient ground; thirdly, that where inadequacy of price is shown the courts will be quick to seize upon other irregularities in the conduct of the sale, and such irregularities, coupled with inadequacy of price, may be sufficient grounds for avoiding the sale."

In 24 Cyc. 39, in referring to this subject, it is said:

"Inadequacy of the price obtained on the sale, standing alone, is not sufficient ground for setting aside the sale, unless the inadequacy is so great as in itself to raise a presumption of fraud, or to shock the conscience of the court; but when, in connection with the inadequacy of price, there are other circumstances having

a tendency to cause such inadequacy, or any apparent unfairness or impropriety, the sale may be set aside, although such additional circumstances are slight, and, if unaccompanied by inadequacy of price, would not furnish sufficient ground for vacating the sale."

A very large number of cases are cited in support of the excerpts quoted. The authorities are so numerous, however, that we refrain from citing them. The reader who may desire to examine them will find that they cover a vast array of facts which have been held sufficient to authorize courts in setting aside judicial sales and ordering the property resold, as was done in this case.

The instant case so clearly falls within the doctrine announced in the authorities last cited that we deem it wholly unnecessary to pursue the subject further.

It is, however, also contended by appellant that there was some collusion among some of the bidders. We have carefully examined the evidence, and we have failed to discover anything that would justify such a conclusion.

It is also contended that, in view of the evidence, the district court had no discretion in the matter, and hence ought to have confirmed the sale upon appellant's bid of the 8th of November. In view of the many irregularities to which we have referred the district court was clearly authorized to exercise a reasonable—that is, a sound legal discretion in determining whether, in view of its own acts and in the light of the facts, the alleged sale should or should not be vacated. We are of the opinion that the district court was not only justified in vacating the sale of November 8th, but that, if it was satisfied that at least some of the interested parties were misled to their prejudice by the irregularities, it was its duty to vacate the sale and give all interested parties an equal chance to submit new bids. Surely appellant could not suffer legal prejudice by losing an advantage which it gained entirely through manifest irregularities.

In concluding this opinion, we desire to state that by anything we have said or omitted to say we do not wish to be understood as intimating, much less holding, that judicial

sales that have been regularly made may be vacated and set aside without adequate cause. We do hold, however, that mere inadequacy of price is not sufficient cause unless the inadequacy is so gross as to imply fraud or to shock the conscience. Where, however, irregularities like those in this proceeding are present and occur during the bidding, the courts cannot shut their eyes and disregard them.

From what has been said, it follows that the judgments appealed from should be, and they accordingly are, affirmed, with costs.

GIDEON, C. J., and THURMAN, CHERRY, and STRAUP, JJ., concur.